[No. B092939. Second Dist., Div. Five. Nov. 19, 1996.]

GIOVANNI FIOL, Plaintiff and Appellant, v.
JON DOELLSTEDT, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts VII. through IX. of the Discussion.

**COUNSEL**

William C. Snyder for Plaintiff and Appellant.

Rosenfeld, Meyer & Susman, Michael A. Robbins and Lisa M. Jacobsen for Defendant and Respondent.

## OPINION

**GRIGNON, J.**—Plaintiff and appellant Giovanni Fiol appeals from a judgment of dismissal after defendant and respondent Jon Doellstedt's motion for judgment on the pleadings was granted without leave to amend in this sexual harassment action. In the published portion of this opinion we conclude a nonharassing supervisor, who fails to take action to prevent sexual harassment, is not personally liable for sexual harassment under the Fair Employment and Housing Act (FEHA), as either an aider and abettor of the harasser or the employer, or as an agent of the employer. In the unpublished portion of the opinion, we discuss the dismissal of Fiol's common law causes of action. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Fiol began to work for Activision, Inc. on January 5, 1994. Fiol's immediate supervisor was Sean Silva, whose immediate supervisor was Doellstedt. Silva routinely engaged in sexual jokes and innuendoes at Fiol's expense. Silva grabbed Fiol's buttocks and crotch, rubbed his pelvic area against Fiol's back, kissed Fiol, forced Fiol's face into his crotch and demanded oral copulation. Silva told Fiol that in order to advance in Activision, Fiol would have to submit to his sexual advances.

In February 1994, Fiol complained to Doellstedt of Silva's sexual harassment. Fiol complained again to Doellstedt in May 1994 and on June 6, 1994. Nothing was done to investigate Fiol's sexual harassment complaints against Silva or control Silva's behavior. On June 6, 1994, Fiol was terminated by Activision.

Fiol filed sexual harassment charges with the Department of Fair Employment and Housing (DFEH)[1] and obtained a right to sue letter. On December 2, 1994, Fiol filed a complaint against Silva, Doellstedt and Activision[2] alleging 10 causes of action: (1) unlawful sexual harassment under FEHA; (2) unlawful sex discrimination under FEHA; (3) wrongful termination under FEHA; (4) assault; (5) battery; (6) common law invasion of privacy; (7) invasion of privacy under the California Constitution; (8) defamation; (9) intentional infliction of emotional distress; and (10) negligent supervision. Fiol's action against Doellstedt was based solely on Doellstedt's failure to "investigate, control, monitor, discipline or restrain" Silva, even after the

---

[1]The DFEH is an administrative body whose functions include investigation of complaints, conciliation, redress of discrimination, and issuance and prosecution of accusations before the Fair Employment and Housing Commission. (Gov. Code, §§ 12930, 12965, subd. (a), 12969.)

[2]Neither Silva nor Activision is a party to this appeal.

sexual harassment had been reported to him. The complaint also included standard agency, aiding and abetting and conspiracy allegations.

On February 15, 1995, Doellstedt moved for judgment on the pleadings. On March 8, 1995, the trial court granted the motion for judgment on the pleadings without leave to amend. A judgment of dismissal was entered. Fiol appealed.

DISCUSSION

## I. Standard of Review

■ A motion for judgment on the pleadings may be made on the ground that the pleading at issue fails to state facts sufficient to constitute a legally cognizable claim or defense. (*Colberg, Inc.* v. *California* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3]; *Sofias* v. *Bank of America* (1985) 172 Cal.App.3d 583, 586 [218 Cal.Rptr. 388]; *Ion Equipment Corp.* v. *Nelson* (1980) 110 Cal.App.3d 868, 877 [168 Cal.Rptr. 361]; Code Civ. Proc., § 430.10, subd. (e).) Our review is guided by the same rules governing the review of the sustaining of a general demurrer. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

## II. FEHA

The Fair Employment Practice Act, former Labor Code section 1410 et seq., was enacted in 1959. (Stats. 1959, ch. 121, § 1, p. 1999 et seq.) It was recodified in 1980 as part of the FEHA. (Stats. 1980, ch. 992, § 4, p. 3140 et seq.) The FEHA combined the now-repealed Fair Employment Practice Act and the now-repealed Rumford Fair Housing Act. (Health & Saf. Code, former § 35700 et seq.) Under the FEHA and its predecessor statutes, freedom from employment discrimination on the grounds of race, religious creed, color, national origin, ancestry, physical disability, mental disability,

medical condition, marital status, and sex is a civil right. (Gov. Code, § 12921.)[3] Discrimination on the specified grounds is against public policy (§ 12920) and an unlawful employment practice (§ 12940). The FEHA is to be liberally construed to effectuate its purposes. (§ 12993, subd. (a).)

■ "The public policy underlying the FEHA is 'to prohibit harassment and discrimination in employment on the basis of any protected classification. Such conduct whether intentional or unintentional is a violation of the civil rights of California citizenry and has been shown to decrease productivity in the workforce. . . .' [Citation.]" (*Matthews* v. *Superior Court* (1995) 34 Cal.App.4th 598, 602 [40 Cal.Rptr.2d 350].) " '[T]he practice of denying employment opportunity and discriminating in the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance [*sic*], and substantially and adversely affects the interest of employees, employers, and the public in general. . . . [¶] . . . [¶] It is the purpose of [the FEHA] to provide effective remedies which will eliminate such discriminatory practices.' [Citation.]" (*Ibid.*)

In addition to discrimination, the FEHA prohibits harassment on the basis of sex and other protected classifications. "It shall be an unlawful employment practice . . . [¶] . . . [¶] [f]or an employer . . . or any other person, because of . . . sex, . . . to harass an employee . . . . Harassment of an employee . . . by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring." (§ 12940, subd. (h)(1).) "For purposes of this subdivision only, 'employer' means any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly . . . ." (*Id.*, subd. (h)(3)(A).)[4] "It shall be an unlawful employment practice . . . [¶] . . . [¶] [f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (*Id.*, subd. (i).) "It shall be an unlawful employment practice . . . [¶] . . . [¶] [f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so." (*Id.* at subd. (g).) Sexual harassment includes gender harassment. (*Id.*, subd. (h)(3)(C).) ■ Gender harassment includes sexual harassment by a member of the same sex. (*Mogilefsky* v. *Superior Court* (1993) 20 Cal.App.4th 1409, 1416-1418 [26 Cal.Rptr.2d 116].)

---

[3] All statutory references are to the Government Code unless otherwise indicated.

[4] An employer is otherwise generally defined under the FEHA as a person regularly employing *five* or more persons or a person acting as an agent of such person. (§§ 12926, subd. (d), 12940, subd. (h)(4).)

Prior to 1977, no express statutory language allowed an aggrieved employee to recover monetary damages in court for discrimination or harassment. In 1977, the Legislature enacted Labor Code section 1422.2 (Stats. 1977, ch. 1188, § 34, p. 3911), now section 12965, subdivision (b), expanding the scope of remedies expressly available to a person subject to unlawful discrimination or harassment by permitting a court action for the recovery of monetary damages. Section 12965, subdivision (b) requires the DFEH to issue a "right-to-sue" letter if it issues no accusation within 150 days after the filing of a complaint. The section authorizes the complainant to bring a civil action under the FEHA "against the person [or] employer . . . named in the verified complaint [previously filed with the DFEH]." (§ 12965, subd. (b).)

## III. *Aiding and Abetting*

■ The FEHA does not provide a definition of "aiding and abetting."[5] It is appropriate, therefore, to consider the common law definition of aiding and abetting. ■ "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct,

---

[5]The Fair Employment and Housing Commission (FEHC) serves an adjudicatory and rulemaking function; it hears accusations issued and prosecuted by the DFEH; it also adopts regulations. (§ 12935.) The FEHC has adopted a regulation describing aiding and abetting activity: "Aiding and Abetting. [¶] (a) Prohibited Practices. [¶] (1) It is unlawful to assist any person or individual in doing any act known to constitute unlawful employment discrimination. [¶] (2) It is unlawful to solicit or encourage any person or individual to violate the [FEHA], whether or not the [FEHA] is in fact violated. [¶] (3) It is unlawful to coerce any person or individual to commit unlawful employment discrimination with offers of cash, other consideration, or an employment benefit, or to impose or threaten to impose any penalty, including denial of an employment benefit. [¶] (4) It is unlawful to conceal or destroy evidence relevant to investigations initiated by the [FEHC] or the [DFEH] or their staffs. [¶] (5) It is unlawful to advertise for employment on a basis prohibited in the [FEHA]. [¶] (b) Permissible Practices. [¶] (1) It shall not be unlawful, *without more, to* have been present during the commission of acts amounting to unlawful discrimination or to fail to prevent or report such acts unless it is the normal business duty of the person or individual to prevent or report such acts. [¶] (2) It shall not be unlawful to maintain good faith lawful defenses or privileges to charges of discrimination." (Cal. Code Regs., tit. 2, § 7287.7.) Paragraph (b)(1) of the FEHC aiding and abetting regulation describes as a "permissible practice" the failure to prevent or report sexual harassment "unless it is the normal business duty of the person or individual to prevent or report such acts." It might be inferred from this language that it constitutes a "prohibited practice" to fail to prevent sexual harassment if it is the normal business duty of the person or individual to prevent or report such acts. This conduct, however, is not described in paragraph (a) which sets forth the "prohibited practices" constituting aiding and abetting. Accordingly, we conclude the regulation is silent on this issue. To the extent the regulation provides that mere inaction may constitute aiding and abetting, we disagree.

separately considered, constitutes a breach of duty to the third person." (*Saunders* v. *Superior Court* (1994) 27 Cal.App.4th 832, 846 [33 Cal.Rptr.2d 438]; Rest.2d Torts, § 876.) Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting. (Cf. CALJIC No. 3.01.) "As a general rule, one owes no duty to control the conduct of another . . . ." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894]; *Michael R.* v. *Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1068 [205 Cal.Rptr. 312]; *Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275, 282-283 [176 Cal.Rptr. 809].) More specifically, a supervisor is not liable to third parties for the acts of his or her subordinates. (Civ. Code, § 2351; *Malloy* v. *Fong* (1951) 37 Cal.2d 356, 378-379 [232 P.2d 241].)

We are aware of no authority for the proposition that a supervisory employee is personally liable, as an aider and abettor of the wrongdoer, to a subordinate for failing to prevent the misconduct of another subordinate. In the first place, mere failure to act does not constitute the giving of "substantial assistance or encouragement" to the tortfeasor. Moreover, a supervisory employee owes no duty to his or her subordinates to prevent sexual harassment in the workplace. That is a duty owed only by the employer. (§ 12940, subds. (h)(1) and (i); cf. *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511 [28 Cal.Rptr.2d 475, 869 P.2d 454].) We conclude a supervisory employee is not personally liable under the FEHA, as an aider and abettor of the harasser, for failing to take action to prevent the sexual harassment of a subordinate employee.

We next consider whether the supervisor is personally liable under the FEHA, as an aider and abettor of the employer, for failing to prevent sexual harassment. We conclude the supervisor is not. An employee cannot aid and abet his or her corporate employer. (*Janken* v. *GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 77-79 [53 Cal.Rptr.2d 741].) A corporation can act only through its employees; thus, an employee acting on behalf of the employer cannot be acting in concert with the employer, as there is in law only a single actor. (*Id.* at pp. 77-78.) Similarly, under the agent's immunity rule, an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal. (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd., supra*, 7 Cal.4th at p. 512, fn. 4.)

IV.   *Personal Liability of a Supervisor Under the FEHA*

Two recent cases have considered the personal liability of a supervisor under the FEHA for sexual harassment. In *Page* v. *Superior Court* (1995) 31 Cal.App.4th 1206 [37 Cal.Rptr.2d 529], the Third District considered

whether a supervisor, who sexually harassed an employee, could be personally liable under the FEHA for damages. The Third District concluded that a harassing supervisor was a "person" within the meaning of section 12940, subdivision (h)(1) expressly prohibited from sexually harassing an employee. The Third District concluded further that a civil action for monetary damages could be brought against any "person" who had violated the FEHA. The Third District held that a harassing supervisor was personally liable for sexual harassment of an employee in violation of the FEHA.[6]

In *Matthews* v. *Superior Court, supra,* 34 Cal.App.4th 598, this division considered whether a supervisor could be personally liable under the FEHA for aiding and abetting the harassing employee. We agreed with the *Page* court that a "person" incurred liability for violations of the FEHA and held that a supervisor who aided and abetted the harasser was such a "person." In *Matthews*, we did not consider the nature of the conduct which would be sufficient to constitute aiding and abetting. We did, however, plainly suggest that mere inaction would be sufficient. In this opinion, we make clear that mere inaction by a nonharassing supervisor does not constitute aiding and abetting.

The case and statutory authority set forth three clear rules. First, under *Page*, a supervisor who personally engages in sexually harassing conduct is personally liable under the FEHA. Second, under *Matthews*, if the supervisor participates in the sexual harassment or substantially assists or encourages continued harassment, the supervisor is personally liable under the FEHA as an aider and abettor of the harasser. Third, under the FEHA, the employer is vicariously and strictly liable for sexual harassment by a supervisor. In this case, however, we are concerned with a nonharassing second-tier supervisor who fails to take action when an employee complains to the nonharassing second-tier supervisor of sexual harassment by the employee's immediate supervisor.

Sound policy reasons exist for treating such a nonharassing supervisor differently than a harassing supervisor. Individual supervisory employees should be placed at risk of personal liability for personal conduct constituting sexual harassment, either directly as the actual harasser or indirectly as an aider and abettor of the harasser. Such individual supervisory employees should not be placed at risk of personal liability, however, for personnel management decisions which have been delegated to the supervisor by the

---

[6]In *Page*, the appellate court expressly refused to decide two questions: the personal liability of the harassing supervisor as an agent of the employer and the personal liability of harassing nonsupervisory employees, i.e., coworkers. (*Page* v. *Superior Court, supra,* 31 Cal.App.4th at p. 1210.)

employer, such as deciding whether to investigate or take action on a complaint of sexual harassment.

### V. *Agent of the Employer*

■ The FEHA does not define "agent."[7] Therefore, it is appropriate to consider general principles of agency law. ■ An agent is one who represents a principal in dealings with third persons. (Civ. Code, § 2295.) An agent is a person authorized by the principal to conduct one or more transactions with one or more third persons and to exercise a degree of discretion in effecting the purpose of the principal. (*Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 205-206 [30 Cal.Rptr. 253].) A supervising employee is an agent of the employer. (See *Janken* v. *GM Hughes Electronics*, *supra*, 46 Cal.App.4th at pp. 65-66.)

■ Under section 12940, subdivision (h)(3)(A), any person acting as an agent of the employer is an employer for purposes of the FEHA. This statutory language is ambiguous and susceptible of two reasonable constructions. (*Janken* v. *GM Hughes Electronics*, *supra*, 46 Cal.App.4th at pp. 65-66.) Under the first construction, every supervisory employee is an "employer" for purposes of the FEHA and therefore may be personally liable as an employer. Under a second construction, an employer may be vicariously liable under the FEHA for acts of its supervisory employees constituting violations of the FEHA. (*Ibid.*) ■ In fact, the FEHA provides that an employer is strictly liable for the harassment of an employee by an agent or supervisor, while the employer is only liable for harassment of an employee by nonagents or nonsupervisors if the employer, its agents or supervisors know or should know of the harassing conduct and the employer fails to take immediate and appropriate corrective action. (*Kelly-Zurian* v. *Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 415 [27 Cal.Rptr.2d 457]; *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608, fn. 6 [262 Cal.Rptr. 842].)

■ We believe the agent of the employer language is more reasonably susceptible of the vicarious liability construction for a number of compelling reasons. (*Janken* v. *GM Hughes Electronics*, *supra*, 46 Cal.App.4th at p. 66.) First, such a construction has been adopted by a "clear and growing consensus" of the federal circuit courts which have examined the same language in title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.), and the Americans with Disabilities Act (42 U.S.C. § 12111 et seq.). (*Janken* v. *GM Hughes Electronics*, *supra*, 46 Cal.App.4th at pp. 66-71; *Tomka* v. *Seiler*

---

[7]Nor is the term "agent" defined in FEHC regulations.

*Corp.* (2d Cir. 1995) 66 F.3d 1295, 1313-1316; *Dici* v. *Com. of Pa.* (3d Cir. 1996) 91 F.3d 542, 552; *Birkbeck* v. *Marvel Lighting Corp.* (4th Cir. 1994) 30 F.3d 507, 510; *Grant* v. *Lone Star Co.* (5th Cir. 1994) 21 F.3d 649, 651-653; *U.S. E.E.O.C.* v. *AIC Security Investigations, Ltd.* (7th Cir. 1995) 55 F.3d 1276, 1279-1282; *Miller* v. *Maxwell's Intern. Inc.* (9th Cir. 1993) 991 F.2d 583, 587-588; *Haynes* v. *Williams* (10th Cir. 1996) 88 F.3d 898, 899-901; *Cross* v. *State of Ala.* (11th Cir. 1995) 49 F.3d 1490, 1504; *Gary* v. *Long* (D.C. Cir. 1995) 59 F.3d 1391, 1399; cf. *Lenhardt* v. *Basic Institute of Technology, Inc.* (8th Cir. 1995) 55 F.3d 377, 380-381 [relying on consensus of federal authority to conclude an analogous state law does not provide for individual liability].)

Second, imposition of personal liability is contrary to general principles of agency law. Ordinarily, an agent is not liable for acts of a sub-agent. (Civ. Code, § 2351 ["A sub-agent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for the acts of the sub-agent."].) In addition, ordinarily an agent is not individually liable for acts undertaken on behalf of the principal which are within the legitimate scope of delegated personnel management authority. (*Janken* v. *GM Hughes Electronics, supra,* 46 Cal.App.4th at p. 79, fn. 27; *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd., supra,* 7 Cal.4th at p. 512, fn. 4.) An agent is responsible only for his or her own wrongdoing. (*Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 504-505 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447]; *James* v. *Marinship Corp.* (1944) 25 Cal.2d 721, 742-743 [155 P.2d 329, 160 A.L.R. 900]; *Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 599 [94 Cal.Rptr. 200]; *Bayuk* v. *Edson* (1965) 236 Cal.App.2d 309, 320 [46 Cal.Rptr. 49]; Rest.2d Agency, § 343, p. 105; Civ. Code, § 2343, subd. 3.)

Third, imposition of personal liability on a supervisor for failing to take action would only marginally increase the likelihood of recovery of damages or prevention of such inaction in the future. (*Janken* v. *GM Hughes Electronics, supra,* 46 Cal.App.4th at pp. 74-76.) Generally, the employer would be responsible for the supervisor's share of damages. (Lab. Code, § 2802.) In any event, the employer would remain liable. (*Janken* v. *GM Hughes Electronics, supra,* 46 Cal.App.4th at pp. 76-77.) Moreover, an employer sued because of the inaction of a supervisor would almost certainly discipline that supervisor and take pains to ensure unjustified inaction does not occur in the future. (*Ibid.*)

Finally, if the Legislature had intended such a major shift in the law of agency, it would have expressly so stated. It certainly has not so stated to

date. If the Legislature intends to impose personal liability on nonharassing supervisors for failure to take action on sexual harassment complaints, it should expressly amend the statute to so provide. Such a determination rests on diverse public policy considerations, such as the availability and cost of insurance coverage, not within the purview of an appellate court, which is necessarily limited to the presentations of the parties and its own independent research.

We recognize that the FEHC has used broad language in its published decisions imposing personal liability on individuals with authority to hire and fire or to control the conditions of employment. The FEHC has stated that personal liability may be imposed on any such individuals who participate in the harassment or fail to take action upon learning of the harassment. However, a closer scrutiny of the FEHC decisions reveals that personal liability has actually been imposed only on the actual harasser or one who participated in the harassment. We have found no FEHC decision in which personal liability was imposed solely on the basis of failure to take action. (*DFEH* v. *Right Way Homes, Inc.* (1990) No. 90-16, FEHC Precedential Decs. 1990-1991, CEB 5.1, p. 15 [executive director was primary harasser]; *DFEH* v. *Madera County* (1990) No. 90-03, FEHC Precedential Decs. 1990-1991, CEB 1, p. 27 [immediate supervisor sexually assaulted complainant]; *DFEH* v. *Huncot Properties* (1988) No. 88-21, FEHC Precedential Decs. 1988-1989, CEB 8, p. 12, mod. (1991) No. 91-10, FEHC Precedential Decs. 1990-1991, CEB 8 [supervisor sexually harassed and assaulted complainant]; *DFEH* v. *Del Mar Avionics* (1985) No. 85-19, FEHC Precedential Decs. 1984-1985, CEB 16, pp. 24-25 [supervisor harassed complainant]; *DFEH* v. *La Victoria Tortilleria, Inc.* (1985) No. 85-04, FEHC Precedential Decs. 1984-1985, CEB 13, p. 19 [supervisor sexually harassed employee]; *DFEH* v. *Hart and Starkey, Inc.* (1984) No. 84-23, FEHC Precedential Decs. 1984-1985, CEB 9, pp. 17-19 [chief executive officer participated in and tacitly approved sexual harassment]; *DFEH* v. *Bee Hive Answering Service* (1984) No. 84-16, FEHC Precedential Decs. 1984-1985, CEB 8, pp. 14-16 [partner perpetrated the harassment].)[8]

Our conclusion is buttressed by the analysis of Division Two of this district in *Janken* v. *GM Hughes Electronics, supra,* 46 Cal.App.4th 55, an age discrimination case. Division Two concluded "it was the intent of the Legislature to place individual supervisory employees at risk of personal

---

[8]We also recognize that a number of appellate decisions in this state have involved individual defendants in actions under the FEHA in which no argument against personal liability was raised. (*Caldwell* v. *Montoya* (1995) 10 Cal.4th 972, 978-979, fn. 3 [42 Cal.Rptr.2d 842, 897 P.2d 1320].) It is sufficient to state that those decisions do not constitute authority for issues which were not raised or resolved.

liability for personal conduct constituting harassment, but that it was not the intent of the Legislature to place individual supervisory employees at risk of personal liability for personnel management decisions later considered to be discriminatory. We conclude that the Legislature's differential treatment of harassment and discrimination is based on the fundamental distinction between harassment as a type of conduct not necessary to a supervisor's job performance, as contrasted with business or personnel management decisions —which might later be considered discriminatory—as inherently necessary to performance of a supervisor's job." (*Id.* at pp. 62-63.) While the *Janken* court considered the distinction between harassment and discrimination, its analysis is equally relevant to the distinction between harassing and nonharassing supervisors. A nonharassing supervisor who fails to take action on a sexual harassment complaint by a subordinate has not engaged in personal conduct constituting harassment, but rather has made a personnel management decision which in retrospect may be considered to be inadequate or improper.

## VI. *Conclusion of the FEHA Discussion*

It is an unlawful employment practice for a supervisor to sexually harass an employee. If a supervisor sexually harasses an employee, the harassing supervisor is personally liable for money damages and the employer is vicariously and strictly liable for the harassment. If a supervisor aids and abets sexual harassment of an employee, the supervisor is personally liable for money damages. A supervisor who, without more, fails to take action to prevent sexual harassment of an employee is not personally liable as an aider and abettor of the harasser, an aider and abettor of the employer or an agent of the employer.

A supervisor does not aid and abet a harasser by mere inaction. A supervisor does not aid and abet the employer by acts constituting personnel management decisions. The "agent of an employer" language in section 12940, subdivision (h)(3)(A) does not impose personal liability on a nonharassing supervisor, but rather imposes on the employer vicarious liability for the supervisor's acts. Such a construction of this ambiguous statutory language is reasonable and consistent with the legislative purpose and intent behind the FEHA. It is also consistent with general principles of agency law and federal appellate decisions interpreting parallel provisions of federal law.

VII.-IX.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1318.

DISPOSITION

The judgment is affirmed. Doellstedt is to recover his costs on appeal.

Armstrong, J., concurred.

**TURNER, P. J.,** Dissenting.—I respectfully dissent from the majority opinion insofar as it holds defendant, Jon Doellstedt, is not subject to potential civil liability under the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.)[1] A supervisor with knowledge of ongoing sexual harassment occurring in the workplace, or of a complaint of such misconduct, who fails to take *any* investigative or corrective action is subject to potential civil liability under the FEHA. That an individual can be personally liable for violations of the FEHA is evident from: the policy underlying and the purposes of the FEHA; the language of the statute; its legislative history; regulations promulgated under the FEHA; construction of the act by the Fair Employment and Housing Commission (commission); the Legislature's acceptance of the commission's construction; and decisional authority. A supervisor is an "agent" of the employer and is therefore an employer for purposes of the FEHA. (§§ 12940, subd. (h)(3)(A), 12926, subd. (d).) An employer has a mandatory duty under the FEHA to "take all reasonable steps to prevent harassment from occurring," including "immediate and appropriate corrective action." (§ 12940, subd. (h)(1).) A supervisor who fails to take such action commits an unlawful act. Further, that supervisor is a "person" who aids and abets the harasser within the meaning of the FEHA. (§ 12940, subd. (g).) The supervisor, by failing to act, deprives the victim of a discrimination-free work environment, and exacerbates the emotional injury to the aggrieved complainant. Imposing personal liability under the FEHA on a supervisor who, with knowledge of ongoing sexual harassment occurring in the workplace, or of a complaint of such misconduct, fails to take immediate and appropriate action is in keeping with: the policy underlying and the purposes of the FEHA; the statutory language; the legislative history; regulations promulgated under the FEHA; the commission's construction of the act; and decisional authority.

## I. *The Complaint*

Plaintiff's allegations, which must be accepted as true (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]), were as follows. Beginning soon after plaintiff was hired, in January 1994, he was sexually harassed by his immediate supervisor on a

---

[1] All further statutory references are to the Government Code unless otherwise noted.

daily basis. The harassment intensified on those frequent occasions when the supervisor came to work intoxicated. Plaintiff complained of this behavior to his immediate supervisor's superior, Mr. Doellstedt, in February 1994, May 1994, and on June 6, 1994. No action to investigate plaintiff's sexual harassment complaints or to prevent the misconduct was ever taken. Instead, plaintiff was required to tolerate the harassment as a condition of his employment. The failure of plaintiff's supervisors, including Mr. Doellstedt, to act created a "generally indifferent atmosphere" in the workplace. Management's failure to prevent the workplace sexual harassment "had a severe psychological and physical effect on . . . plaintiff." On June 6, 1994, plaintiff made his third complaint to Mr. Doellstedt about the sexual harassment. On June 6, 1994, after making his third complaint about the sexual harassment, plaintiff was fired. Plaintiff believed his employment was terminated because he complained about the sexual harassment.

Plaintiff alleged that by failing to take any action with respect to the ongoing sexual harassment Mr. Doellstedt violated the FEHA. In addition, it was alleged the defendants, including Mr. Doellstedt, engaged in unlawful sex discrimination "by requiring plaintiff to tolerate, as a condition of employment, the offensive and abusive treatment to which he was subjected solely because he is a man, . . ." and "effected a wrongful termination of plaintiff, on the basis of his sex . . . ." Plaintiff further alleged the termination of his employment for refusing to tolerate the sexual harassment was wrongful as in violation of public policy. Plaintiff predicated liability as to Mr. Doellstedt on two theories which are relevant to this opinion. The first theory was that Mr. Doellstedt was an agent of the corporate employer. The second theory was that Mr. Doellstedt aided and abetted his codefendants, including the individual who harassed plaintiff.

## II.  *Policy Underlying and Purposes of the FEHA*

The FEHA is remedial legislation which *must be liberally construed* to accomplish the purposes of the act. (§ 12993, subd. (a); *Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 243 [5 Cal.Rptr.2d 782, 825 P.2d 767].) The public policy underlying the FEHA is "that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age." (§ 12920.) The Legislature has declared, "It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and

substantially and adversely affects the interest of employees, employers, and the public in general. . . . [¶] It is the purpose of this part to provide effective remedies which will eliminate such discriminatory practices." (§ 12920.) The Legislature has also declared, "In order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons." (§ 12920.5.)

### III. *The Statutory Language Evidences an Intent to Hold Individuals Liable for Unlawful Employment Practices*

To determine the application of a particular statute, a court looks first to the language of the statute. (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; *Curl* v. *Superior Court* (1990) 51 Cal.3d 1292, 1300 [276 Cal.Rptr. 49, 801 P.2d 292].) If the language of the statute, read in the light of the statutory scheme as a whole, is clear and unambiguous, this court must apply it according to its plain meaning. (*Ibid.; Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) If the language is susceptible of more than one interpretation, a court looks to the legislative history of the statute and to the administrative construction of it. (*Robinson* v. *Fair Employment & Housing Com., supra*, 2 Cal.4th at p. 234; *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148].)

The language of the FEHA evidences an intent to hold individuals liable for unlawful employment practices. First, individuals can commit acts which are unlawful under the FEHA. With respect to sexual harassment, section 12940 provides: "It shall be an unlawful employment practice . . . [¶] . . . [¶] (h)(1) For an employer, . . . *or any other person*, because of . . . sex . . . to harass an employee . . . . Harassment of an employee . . . by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. . . ." (Italics added.) Subdivision (h)(3)(A) of section 12940 defines "employer," for purposes of subdivision (h), as meaning "any person regularly employing one or more persons, or any *person* acting as an *agent* of an employer, directly or indirectly . . . ." (Italics added.) With respect to discrimination, section 12940 provides: "It shall be an unlawful employment practice . . . [¶] (a) For an *employer*, because of the . . . sex of any person, . . . to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions or privileges of employment." (Italics added.) "Employer" is defined for purposes of discrimination

claims as including "any person regularly employing five or more persons, or any *person* acting as an *agent* of an employer, directly or indirectly; . . . ." (§ 12926, subd. (d), italics added.) It is also unlawful "[f]or any *person* to aid, abet, incite, compel, or coerce the doing of any [wrongful act of discrimination or harassment]." (§ 12940, subd. (g), italics added.) It is further unlawful "[f]or an *employer* . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (i), italics added.) The FEHA defines a "person" as including "one or more individuals." (§ 12925, subd. (d).)

Second, an administrative complaint or civil action seeking monetary damages can be filed against an individual. An aggrieved employee may file a complaint with the Department of Fair Employment and Housing (department) against "the *person*, employer, labor organization or employment agency alleged to have committed the unlawful practice . . . ." (§ 12960, italics added.) The department is authorized to file a written accusation against "the *person*, employer, labor organization or employment agency accused . . . ," known as the "respondent." (§ 12965, subd. (a), italics added.) The commission, upon finding the respondent, which includes a person, engaged in an unlawful employment practice, can issue an order requiring the respondent to cease and desist from the unlawful practice. (§ 12970, subd. (a).) Further, the commission can order the respondent, which can be a person, to pay actual damages. (§ 12970, subd. (b).) If the department does not issue an accusation within 150 days after the filing of a complaint, it must issue a "right-to-sue" notice. (§ 12965, subd. (b).) The complainant may then bring a civil action under the FEHA "against the *person*, employer, labor organization or employment agency named in the verified complaint [previously filed with the department]." (§ 12965, subd. (b), italics added.) The plaintiff in a civil action under the FEHA may recover monetary damages against an individual who engaged in an unlawful employment practice. (*State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 429 [217 Cal.Rptr. 16, 703 P.2d 354]; *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 221 [185 Cal.Rptr. 270, 649 P.2d 912].) The Legislature has repeatedly indicated in the FEHA that individuals can be sued for violating the act. The unambiguous words chosen by the Legislature are conclusive evidence of its intent.

IV. *Legislative History*

The legislative history of the FEHA supports the conclusion individuals who engage in unlawful employment practices may be held civilly liable. In the April 16, 1959, report of the Legislative Counsel on the Fair Employment Practice Act (the predecessor statute to the FEHA) (Assem. Bill No.

91) at page 4, the statute was described as "[s]pecifying that its provisions extend to *all natural persons* and all types of organization . . . ." (Italics added.) Furthermore, there is nothing in the legislative history of either the FEHA or the Fair Employment Practice Act which reflects an intent to absolve individual supervisory personnel of personal liability.

## V. *Construction of the Act by the Commission*

An administrative agency's construction of a statute is entitled to great weight, particularly when it is consistent with the language utilized by the Legislature. (*Robinson* v. *Fair Employment & Housing Com., supra*, 2 Cal.4th at pp. 234-235; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 491 [156 Cal.Rptr. 14, 595 P.2d 592].) Regulations promulgated under the FEHA define an agent as including an individual. A regulation promulgated pursuant to the FEHA in 1980 states, "Any *person or individual* acting as an *agent* of an employer, directly or indirectly, *is also an employer.*" (Cal. Code Regs., tit. 2, § 7286.5, subd. (a)(3), italics added.) The regulations also define employer, for purposes of discrimination claims, as: "Any person or individual engaged in any business or enterprise regularly employing five or more individuals, including individuals performing any service under any appointment, contract of hire or apprenticeship, express or implied, oral or written." (Cal. Code Regs., tit. 2, § 7286.5, subd. (a).)

Further, the commission has consistently held individuals having supervisory status personally liable under the FEHA for harassment in the workplace. In many of those cases the supervisor was the harasser, but was held liable both as an "agent," and therefore an "employer," and as a "person" who engaged in unlawful conduct. (E.g., *DFEH* v. *Right Way Homes, Inc.* (1990) No. 90-16, FEHC Precedential Decs. 1990-1991, CEB 5.1, p. 15 [executive director who was "primary harasser" was personally liable for racial harassment as an "employer" because he acted as an "agent" of Right Way Homes, Inc., and as a "person" because he harassed the complainant]; *DFEH* v. *Madera County* (1990) No. 90-03, FEHC Precedential Decs. 1990-1991, CEB 1, pp. 27-28 [immediate supervisor who sexually assaulted and harassed complainant was personally liable as an "agent" and as a "person"].) The commission has also imposed personal liability where a business owner and agent of the corporate employer had actual notice employees were being sexually harassed by their immediate supervisor and not only failed to prevent the misconduct from continuing but by his attitude fostered and tacitly approved the wrongful conduct. (*DFEH* v. *Hart and Starkey, Inc.* (1984) No. 84-23, FEHC Precedential Decs. 1984-1985, CEB 9, p. 19; cf. *DFEH* v. *Madera County, supra*, FEHC Dec. No. 90-03, CEB 1 at p. 27 [harassing supervisor's superior, who took "strong action" immediately upon learning of sexual assault was not personally liable].) Moreover, the commission has stated that a supervisor is potentially subject to

personal liability under the FEHA as an "agent" and therefore an "employer" for a subordinate's sexual harassment of an employee when the supervisor, with knowledge of the harassment, fails to take appropriate action. (See *DFEH* v. *Madera County, supra*, FEHC Dec. No. 90-03, CEB 1, pp. 26-27.) Of considerable importance is the fact no regulation promulgated under the FEHA, nor any precedential decision, establishes a rule precluding individual liability in the context of sexual harassment or other unlawful discrimination.

## VI. *The Legislature's Acceptance of the Commission's Construction of the Act*

The Legislature has accepted the commission's long-standing construction of the FEHA with respect to individual liability. The commission has repeatedly imposed personal liability on individuals under the FEHA for at least the past 12 years. (E.g., *DFEH* v. *Bee Hive Answering Service* (1984) No. 84-16, FEHC Precedential Decs. 1984-1985, CEB 8, pp. 14-16 [partner and co-owner of business with power to hire and fire and to determine working conditions who perpetrated the harassment was personally liable both as an "agent" and therefore an "employer," and as a "person" who engaged in the misconduct]; *DFEH* v. *Hart and Starkey, Inc., supra*, FEHC Dec. No. 84-23, CEB 9 at p. 19 [sole owner, president, and chief executive officer with power to hire and fire who tacitly approved the sexual harassment was personally liable]; *DFEH* v. *La Victoria Tortilleria, Inc.* (1985) No. 85-04, FEHC Precedential Decs. 1984-1985, CEB 13, p. 19 [supervisor and vice-president with power to hire and fire who sexually harassed employee was personally liable as an "agent" and as a "person"]; *DFEH* v. *Del Mar Avionics* (1985) No. 85-19, FEHC Precedential Decs. 1984-1985, CEB 16, pp. 24-25 [immediate supervisor who harassed complainant was personally liable as an "agent" and as a "person"]; *DFEH* v. *Huncot Properties* (1988) No. 88-21, FEHC Precedential Decs. 1988-1989, CEB 8, p. 12, mod. (1991) No. 91-10, FEHC Precedential Decs. 1990-1991, CEB 8, p. 1 [supervisor and highest level manager with ultimate authority regarding employment decisions who sexually harassed and assaulted complainant was personally liable as an "agent" and as a "person"]; *DFEH* v. *Madera County, supra*, FEHC Dec. No. 90-03, CEB 1 at pp. 27-28 [immediate supervisor with "significant power" over the complainant's employment status who sexually assaulted complainant was personally liable as an "agent/employer" and as a "person"]; *DFEH* v. *Right Way Homes, Inc., supra*, FEHC Dec. No. 90-16, CEB 5.1, p. 15 [executive director who was "primary harasser" personally liable for racial harassment as an "agent" and as a "person"].) Given the consistent commission decisions, the Legislature may be presumed to be aware of the administrative agency's construction of the statute. (*Robinson* v.

*Fair Employment & Housing Com.*, *supra*, 2 Cal.4th at p. 235, fn. 7.) Furthermore, the Legislature has repeatedly amended portions of the FEHA without changing the language evidencing an intent to hold persons civilly liable for violations of the act. The Legislature amended portions of section 12940, which sets forth the unlawful practices, and defines "employer" for purposes of sexual harassment, in 1981, 1982, 1984, 1985, 1987, 1989, 1992, and 1993. (Stats. 1981, ch. 11, § 1, pp. 24-26; Stats. 1981, ch. 270, § 1, pp. 1363-1365; Stats. 1982, ch. 1193, § 2, pp. 4258-4260; Stats. 1984, ch. 1754, § 2, pp. 6404-6406; Stats. 1985, ch. 1151, § 2, pp. 3891-3894; Stats. 1987, ch. 605, § 1, pp. 1942-1945; Stats. 1989, ch. 1309, §§ 1-11, pp. 5236-5251; Stats. 1992, ch. 913, § 23.1; Stats. 1993, ch. 711, § 2.) Section 12926, which defines "employer" for purposes other than sexual harassment, was amended in 1985, 1990, 1992, and 1993. (Stats. 1985, ch. 1151, § 1, pp. 3890-3891; Stats. 1990, ch. 15, § 1, pp. 87-88; Stats. 1992, ch. 913, § 21.3; Stats. 1993, ch. 1214, § 5.) The Legislature could have, but did not, amend the FEHA to absolve individual persons of liability under the act. Despite the opportunity to repeal the administrative interpretation of the FEHA, the Legislature chose repeatedly not to do so. Because the interpretation of the FEHA in this regard is not clearly erroneous, California courts are required to enforce the agency's construction of the FEHA. (*Robinson* v. *Fair Employment & Housing Com.*, *supra*, 2 Cal.4th at p. 234; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.*, *supra*, 24 Cal.3d at p. 491; *City of Los Angeles* v. *Public Utilities Com.* (1975) 15 Cal.3d 680, 696 [125 Cal.Rptr. 779, 542 P.2d 1371].)

VII.  *Decisional Authority*

In *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 48 [260 Cal.Rptr. 183, 775 P.2d 508], our Supreme Court stated, in *dicta,* that an employee or agent of an employer could be personally liable for violation of the statutory duty not to "aid, abet, incite, compel, or coerce the doing of any of the acts" forbidden by the FEHA; that statutory duty extends to "any person." (§ 12940, subd. (g).) Moreover, the courts of this state have imposed personal liability on individuals under the FEHA. In *Page* v. *Superior Court* (1995) 31 Cal.App.4th 1206, 1208 [37 Cal.Rptr.2d 529], the Court of Appeal for the Third District held a supervisor who sexually harassed an employee was a "person" subject to personal liability under the FEHA. In *Matthews* v. *Superior Court* (1995) 34 Cal.App.4th 598, 599-600, 605 [40 Cal.Rptr.2d 350], this court held that supervisors who refused to take any investigative or corrective action when informed of sexual harassment were subject to personal liability under the FEHA.

## VIII. *Agent*

I agree with the majority that a supervisor is an agent of the employer.[2] However, I part company with the majority in their construction of the agent of the employer language as a provision limiting the vicarious liability of the employer rather than one imposing individual responsibility on agents. I would find a supervisor, as an agent of the employer, is an "employer" within the meaning of the FEHA, and may be held personally liable as such. (§§ 12940, subd. (h)(3)(A), 12926, subd. (d); Cal. Code Regs., tit. 2, § 7286.5, subd. (a)(3); see *Valdez* v. *City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1059 [282 Cal.Rptr. 726] [agents of employers are personally liable as employers under § 12940, subd. (a), and § 12926, subd. (d) of the FEHA].) I recognize that many of the federal circuit courts treat parallel agent of the employer language in title VII[3] and other federal acts as a vicarious liability provision rather than an individual liability provision. (*Tomka* v. *Seiler Corp.* (2d Cir. 1995) 66 F.3d 1295, 1313-1317; *Grant* v. *Lone Star Co.* (5th Cir. 1994) 21 F.3d 649, 653; *Williams* v. *Banning* (7th Cir. 1995) 72 F.3d 552, 553-555; *Cross* v. *State of Ala.* (11th Cir. 1995) 49

---

[2] The FEHA does not define "agent." Nor do the regulations promulgated pursuant to the FEHA. Therefore, it is appropriate to look to general principles of agency law. (*Capitol City Foods, Inc.* v. *Superior Court* (1992) 5 Cal.App.4th 1042, 1047-1050 [7 Cal.Rptr.2d 418]; see *Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 72 [91 L.Ed.2d 49, 62-63,106 S.Ct. 2399] [parallel definition of "employer" under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) should be construed by reference to general principles of agency law].) The statutory definition of "agent" under California law is "one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) The term "agent" is further defined by comparison to the concept of an "employee." The two terms are not synonymous. (29 Cal.Jur.3d, Employer and Employee, § 11, p. 551.) An employee is subject to the absolute control and direction of the employer in regard to acts to be done in the course and scope of employment. (*Societa per Azioni de Navigazione Italia* v. *City of Los Angeles* (1982) 31 Cal.3d 446, 457-458 [183 Cal.Rptr. 51, 645 P.2d 102]; *Tieberg* v. *Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 946-947 [88 Cal.Rptr. 175, 471 P.2d 975]; *Holmes* v. *Roth* (1992) 11 Cal.App.4th 931, 935 [14 Cal.Rptr.2d 315]; 29 Cal.Jur.3d, Employer and Employee, § 1, p. 533.) An agent, on the other hand, "works not only *for,* but *in the place of,* [her or] his principal. [Citation.]" (*Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 205-206 [30 Cal.Rptr. 253], original italics; *People* v. *Foss* (1936) 7 Cal.2d 669, 670 [62 P.2d 372] [agent acted for and represented principal].) As the Court of Appeal stated in *Gipson:* "The distinguishing features of an agency . . . are its representative character and its derivative authority. [Citation.] . . . 'Agency is the relation that results from the act of one person, called the principal, who authorizes another, called the agent, to conduct one or more transactions with one or more third persons and *to exercise a degree of discretion* in effecting the purpose of the principal.' " (*Gipson* v. *Davis Realty Co., supra,* 215 Cal.App.2d at p. 206, original italics.) Applying these common law agency concepts to the present case, involving a supervisory employee, I conclude that defendant was an agent of his employer. A supervisory employee, unlike a co-employee, exercises authority, derived from the employer, over subordinates, and is generally imbued with a degree of discretion in acting for the employer.

[3] Under title VII, the term "employer" includes "any agent" of an employer. (42 U.S.C. § 2000e(b).)

F.3d 1490, 1504; *Gary* v. *Long* (D.C. Cir. 1995) 59 F.3d 1391, 1399 [313 App.D.C. 403]; *Miller* v. *Maxwell's Intern. Inc.* (9th Cir. 1993) 991 F.2d 583, 587-588; but see *Ball* v. *Renner* (10th Cir. 1995) 54 F.3d 664, 667; *Paroline* v. *Unisys Corp.* (4th Cir. 1989) 879 F.2d 100, 104, vacated in part (1990) 900 F.2d 27, 28.) Those circuit courts construe the agent of the employer language as limiting an employer's vicarious liability to the acts of its agents, rather than as imposing liability on agents of employers. However, with respect to the FEHA, nothing in the legislative history, nor in the language of the act, suggests such a construction was intended.[4] Moreover, imposition of personal liability on a supervisory employee is consistent with: the policies underlying and the purposes of the FEHA; the language of the act; its legislative history; its construction by the commission; regulations promulgated under the FEHA; and decisional authority.

One final note is in order in connection with the differences between the FEHA and the federal antidiscrimination act. The FEHA defines the act of discrimination by any person as prohibited conduct (§ 12940, subd. (g)) while title VII does not have such a prohibition. The Federal Civil Rights Act defines the prohibited conduct as follows, "It shall be an unlawful employment practice for an *employer* [¶] (1) . . . to discriminate against any individual . . . because of such individual's . . . sex . . . ." (42 U.S.C. § 2000e-2(a)(1), italics added.) By contrast, section 12940 states: "It shall be an unlawful employment practice . . . [¶] . . . [¶] (g) For any *person* to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so." (Italics added.) The reach of the state act is broader than its federal counterpart in terms of who is liable for sexual harassment. The state and federal antidiscrimination statutes should be interpreted differently in terms of personal liability; they are written differently.

IX. *Mandatory Duty to Prevent Harassment from Occurring*

A supervisor (or any FEHA "employer") who, with knowledge of sexual harassment occurring in the workplace, or of a complaint of such misconduct, fails to take *any* investigative or corrective action commits an unlawful

---

[4]In the case of sexual harassment, the FEHA expressly provides an employer is liable for wrongful conduct by a nonsupervisory employee only "if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (§ 12940, subd. (h)(1).) This language makes it clear an employer is not strictly liable for harassment of an employee by a co-employee of which the employer had no knowledge. A nonsupervisory employee is not an agent of the employer. Therefore, this language would not have been necessary if the agent of the employer language used throughout the FEHA limited an employer's vicarious liability, in all cases, to the acts of its agents.

act. When a special relationship exists between two parties, a duty to act for the protection of another may arise, and liability can be imposed on one who fails to act. (E.g., *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 431 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; Rest.2d Torts, § 315.) Moreover, under the FEHA, an employer has an affirmative and mandatory duty to prevent harassment from occurring. (§ 12940, subd. (h)(1).) It is an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (i).) The statute imposes a duty on the employer to protect employees from sexual harassment. That duty extends to a supervisor as an "agent" of the employer (§ 12940, subd. (h)(3)(A)), and as a "person." (§ 12940, subd. (g).) The supervisor who breaches that duty to a victim of sexual harassment by failing to act when informed the misconduct is occurring violates the act.

## X. *Aiding and Abetting*

As noted above, it is unlawful "[f]or any *person* to aid, abet, incite, compel, or coerce the doing of any [wrongful act of discrimination or harassment]." (§ 12940, subd. (g), italics added.) The FEHA does not define "aiding and abetting." Further, I agree with the majority that as a general rule, "aiding and abetting" liability requires knowledge and "concerted wrongful action" or "substantial assistance or encouragement." (*Janken* v. *GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 78 [53 Cal.Rptr.2d 741]; *Saunders* v. *Superior Court* (1994) 27 Cal.App.4th 832, 846 [33 Cal.Rptr.2d 438].) However, the FEHA regulation governing aiding and abetting provides: "(a) Prohibited Practices. [¶] (1) It is unlawful to assist any person or individual in doing any act known to constitute unlawful employment discrimination. [¶] (2) It is unlawful to solicit or encourage any person or individual to violate the Act, whether or not the Act is in fact violated. [¶] . . . [¶] (b) Permissible Practices. [¶] (1) *It shall not be unlawful, without more, . . . to fail to prevent or report [unlawful acts] unless it is the normal business duty of the person or individual to prevent or report such acts.*" (Cal. Code Regs., tit. 2, § 7287.7, italics added.) Although subdivision (b)(1) of the regulation is stated in the negative, it supports the conclusion it is unlawful for a supervisor to fail to prevent or report acts of sexual harassment. The regulation suggests that the failure to act, in violation of the FEHA's imposition of a mandatory duty to do so, is tantamount to approving, condoning, assisting in, or encouraging the doing of the wrongful act. (*DFEH* v. *Fresno Hilton Hotel* (1984) No. 84-03, FEHC Precedential Decs. 1984-1985, CEB 2 at pp. 38-40.) A supervisor's failure to put a stop to sexual harassment of an employee deprives the victim of a discrimination-free work environment. In addition, it may cause the harasser to believe such

behavior will be tolerated. The failure to act may encourage the harasser to continue or escalate his or her misconduct. Further, the failure to act may well cause emotional injury to the complainant in addition to that suffered as a result of the harassment itself. (E.g., *DFEH* v. *Right Way Homes, Inc.*, *supra*, FEHC Dec. No. 90-16, CEB 5 at pp. 16-17; *DFEH* v. *Hart and Starkey, Inc.*, *supra*, FEHC Dec. No. 84-23, CEB 9 at p. 35.)

Also, this court has expressly held, albeit without extended analysis, that a supervisor who fails or refuses to act in the face of a sexual harassment complaint is personally liable as one who aided and abetted in the wrongful act. (*Matthews* v. *Superior Court, supra*, 34 Cal.App.4th at pp. 600-601, 605.) In *Matthews*, an employee alleged he had complained to two superiors that his immediate supervisors were engaging in sexual harassment of him. The supervisors' superiors refused to take any action in response to the plaintiff's complaints. The trial court sustained the superiors' demurrer to the complaint on the ground they could not be held personally liable under the FEHA. This court held with respect to those nonharassing superiors, "The other individual defendants are persons who allegedly aided or abetted in the proscribed acts, in violation of section 12940, subdivision (g)." (*Id.* at p. 605.) We concluded: "Our holding that the responsibility for such acts must be borne both by the offender as well as the employer who tolerates the offense is consistent with the Legislature's intent to provide 'effective remedies which will eliminate such discriminatory practices.' " (*Id.* at p. 606.)

I respectfully reject the notion that a supervisor's refusal to take any action in the face of a sexual harassment complaint is an act constituting *a personnel management decision* which in *retrospect* may be considered inadequate or improper. The refusal to act is not a mere personnel management decision. Any supervisor, vested with discretion and authority by the employer, here a corporation, is subject to the mandatory, statutory duty to "take all reasonable steps to prevent harassment from occurring." (§ 12940, subd. (h)(1).) The failure to respond to three sexual harassment complaints and then to terminate the complainant is not a mere personnel management decision. It is an unlawful act. (§ 12940, subd. (i).)

XI. *Imposition of Individual Liability Furthers the Purposes of the FEHA*

Supervisory personnel who, with knowledge of sexual harassment occurring in the workplace, or of a complaint of such misconduct, fail to prevent the wrongful conduct should be held personally liable under the FEHA. Holding such individuals civilly liable furthers the public policy underlying the act. The Legislature, in enacting the FEHA, sought to protect the right to

hold employment free from discrimination or harassment on the basis, inter alia, of sex. The purpose of the FEHA was to provide effective remedies to eliminate such wrongful practices. (§§ 12920, 12920.5.) The elimination of unlawful employment practices can best be achieved by holding the guilty parties responsible.

## XII. *Conclusion*

A supervisor with knowledge of sexual harassment occurring in the workplace, or of a complaint of such misconduct, who fails to take *any* investigative or corrective action is subject to potential civil liability under the FEHA. That conclusion is in keeping with language and purposes of the FEHA and it furthers the policies underlying its enactment.

Appellant's petition for review by the Supreme Court was denied February 19, 1997. Mosk, J., Werdegar, J., and Chin, J., were of the opinion that the petition should be granted.